```
╔══════════════════════════╗
║ USDC SDNY                ║
║ DOCUMENT                 ║
║ ELECTRONICALLY FILED     ║
║ DOC #: _____  ║
║ DATE FILED: JUL 2 4 2007 ║
╚══════════════════════════╝
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :

UNITED STATES OF AMERICA          :

            - v. -                :

MARTIN MCKERNAN,                  :

            Defendant.            :

- - - - - - - - - - - - - - - - - - - - - - - - - x

**INFORMATION**

07 Cr.

**07CRIM. 674**

<u>COUNT ONE</u>
(Conspiracy To Commit Tax Fraud And
To Evade Currency Reporting Requirements)

        The United States Attorney charges:

<u>Background</u>

        1.  At all times relevant to this Information, M&R
European Construction Co., Inc., M&R European Contractors
Corporation, and M1 Construction Corporation (collectively, the
"Companies") were construction companies that specialized in
concrete and masonry work.  All of the Companies were jointly
owned, operated, and controlled by MARTIN MCKERNAN, the
defendant, and a co-conspirator not named as a defendant herein
("CC-1").

        <u>The Currency Reporting And Payroll Tax Requirements</u>

        2.  At all times relevant to this Information:

            a.  Financial institutions within the United
States, which include check-cashing establishments, were required
by law to file a Currency Transaction Report ("CTR") with the

Internal Revenue Service ("IRS") with regard to every transaction in currency in excess of $10,000 in which they were involved.

b.   The financial institutions were required to include on the CTR the name, address, and Social Security number of the customer making the transaction, as well as information concerning the nature of the transaction.   CTRs were intended to reveal the identities of both the person who conducted the transaction and the person for whom the transaction was conducted, which information assists the United States in criminal, tax, and regulatory investigations and proceedings.

c.   The Internal Revenue Code and associated regulations require corporations that pay wages to employees to file Employer Quarterly Tax Returns, IRS Forms 941, on a quarterly basis.   Among other things, Forms 941 are supposed to report the total wages paid by an employer to its employees during the relevant reporting period, as well as the amounts required to be withheld by the employer as part of the federal income tax obligations of the employees, known as Federal Income Tax Withholding ("FITW").   Employers are also required to report and remit to the Internal Revenue Service ("IRS") certain amounts pursuant to the Federal Insurance Contributions Act ("FICA") and Federal Unemployment Tax Act ("FUTA").   FICA contributions are made up of four components: the employer's and employee's equal shares of 6.2% for Social Security and 1.45% for Medicare taxes,

- 2 -

totaling 15.3% of wages. The aforementioned FITW obligations, and those imposed pursuant to FICA and FUTA, are hereinafter referred to as "payroll tax obligations."

### The Conspiracy

3.    From at least in or about November 1999 through at least in or about November 2004, in the Southern District of New York and elsewhere, MARTIN MCKERNAN, the defendant, and others known and unknown, unlawfully, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to defraud the United States and an agency thereof, to wit, the IRS of the United States Department of the Treasury, and to commit offenses against the United States, to wit, violations of Title 26, United States Code, Section 7201, and Title 31, United States Code, Section 5324(a)(2).

### The Objects of the Conspiracy

4.    It was a part and an object of the conspiracy that MARTIN MCKERNAN, the defendant, and others known and unknown, unlawfully, willfully and knowingly would and did defraud the United States of America and the IRS by impeding, impairing, defeating and obstructing the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment, and collection of payroll taxes.

5.    It was a further part and object of the conspiracy that MARTIN MCKERNAN, the defendant, and his co-conspirators,

unlawfully, willfully and knowingly, would and did attempt to evade and defeat a substantial part of the payroll taxes due and owing by the Companies, in violation of Title 26, United States Code, Section 7201.

6.    It was a further part and object of the conspiracy that MARTIN MCKERNAN, the defendant, and his co-conspirators, unlawfully, willfully and knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations prescribed under that section, would and did cause and attempt to cause a domestic financial institution, to wit, the Manhattan Check-cashing Company, to file reports required under Title 31, United States Code, Section 5313(a) and the regulations prescribed under that section, that contained material omissions and misstatements of fact, in violation of Title 31, United States Code, Section 5324(a)(2).

### Means and Methods of the Conspiracy

7.    In or about 1999, MARTIN MCKERNAN, the defendant, and CC-1 began cashing checks made payable to or from the Companies at a check cashing establishment in New York, New York ("the Manhattan Check-cashing Company") to generate cash to pay employees of the Companies all or a portion of their wages and salaries "off the books," that is, without reporting those wages and salaries to the IRS and withholding amounts that the

- 4 -

Companies were required to remit to the IRS.

8.    In order to evade currency transaction reporting requirements and therefore defeat the ability of the IRS to use such reporting to detect payroll and other tax evasion, MARTIN MCKERNAN, the defendant, and CC-1 conspired with an officer of the Manhattan Check-cashing Company ("CC-2") to file CTRs that falsely concealed the nature of the transactions.  Specifically, CC-2 filed CTRs concerning cash transactions involving MCKERNAN and CC-1 that falsely described the transactions as involving another individual who had no involvement in the transactions. After causing this cash to be generated, MCKERNAN caused cash wages and salaries to be paid to certain employees of the Companies.

<u>Overt Acts</u>

9.    In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about the following dates, among others, false CTRs were filed by the Manhattan Check-cashing Company for cash transactions involving MARTIN MCKERNAN, the defendant, and CC-1, in the amounts set forth below:

| CTR Transaction Date | CTR Amount |
|---|---|
| 11/11/1999 | 27,605.00 |
| 11/24/1999 | 41,101.00 |
| 01/16/2001 | 46,245.00 |
| 02/14/2001 | 12,312.00 |
| 02/21/2001 | 17,730.00 |
| 03/07/2001 | 13,790.00 |
| 03/14/2001 | 24,625.00 |
| 03/22/2001 | 23,935.00 |
| 03/29/2001 | 15,839.00 |
| 04/13/2001 | 20,685.00 |
| 04/27/2001 | 25,019.00 |
| 05/10/2001 | 19,700.00 |
| 05/16/2001 | 13,520.00 |
| 05/31/2001 | 21,079.00 |
| 06/14/2001 | 24,894.00 |
| 07/25/2001 | 10,250.00 |
| 08/03/2001 | 21,740.00 |
| 08/17/2001 | 24,920.00 |
| 08/29/2001 | 14,972.00 |

| CTR Transaction Date | CTR Amount |
|---|---|
| 09/14/2001 | 13,100.00 |
| 01/04/2002 | 38,323.00 |
| 01/11/2002 | 13,149.00 |
| 03/01/2002 | 19,700.00 |
| 04/19/2002 | 20,913.00 |
| 04/26/2002 | 20,122.00 |
| 05/17/2002 | 17,656.00 |
| 05/24/2002 | 32,322.00 |
| 06/21/2002 | 14,282.00 |
| 06/28/2002 | 20,238.00 |
| 07/26/2002 | 33,539.00 |
| 10/18/2002 | 14,396.00 |
| 10/25/2002 | 16,297.00 |
| 11/08/2002 | 16,979.00 |
| 12/06/2002 | 17,730.00 |
| 12/20/2002 | 14,479.00 |
| 01/17/2003 | 42,354.00 |
| 02/14/2003 | 24,625.00 |
| 03/28/2003 | 49,304.00 |

| CTR Transaction Date | CTR Amount |
|---|---|
| 06/27/2003 | 12,284.00 |
| 02/03/2004 | 14,309.00 |
| 02/20/2004 | 29,475.00 |
| 03/16/2004 | 31,747.00 |
| 03/24/2004 | 19,865.00 |
| 05/21/2004 | 16,800.00 |
| 05/28/2004 | 34,387.00 |
| 06/04/2004 | 39,300.00 |
| 06/25/2004 | 15,138.00 |
| 07/09/2004 | 35,812.00 |
| 07/30/2004 | 19,650.00 |
| 08/20/2004 | 31,235.00 |
| 09/03/2004 | 25,575.00 |
| 09/24/2004 | 18,882.00 |
| 10/15/2004 | 19,650.00 |
| 10/20/2004 | 19,650.00 |
| 10/29/2004 | 28,810.00 |

b. On numerous occasions from 1999 through 2004, in New York, New York and elsewhere, MCKERNAN and CC-1 paid construction employees in cash without withholding the required

- 8 -

payroll tax obligations.

(Title 18, United States Code, Section 371.)

COUNT TWO
(Filing False Currency Transaction Reports)

The United States Attorney further charges:

11.   The statements in paragraphs 1 through 2 and 7 through 9 are repeated and realleged as if fully stated herein.

12. From at least in or about November 1999 through at least in or about November 2004, in the Southern District of New York and elsewhere, MARTIN MCKERNAN, the defendant, unlawfully, willfully and knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and the regulations prescribed under that section, did cause and attempt to cause a domestic financial institution, to wit, the Manhattan Check-cashing Company, to file reports required under Title 31, United States Code, Section 5313(a) and the regulations prescribed under that section, that contained material omissions and misstatements of fact, and did so while violating other laws of the United States, to wit, MCKERNAN caused to be filed with the IRS, numerous CTRs that contained false statements as to the identities of the persons who conducted the transactions in order to evade the currency transaction reporting requirements and while attempting to evade and defeat payroll taxes and the payment thereof.

(Title 31, United States Code, Sections 5324(a)(2) & (d)(2);
Title 18, United States Code, Section 2.)

- 9 -

FORFEITURE ALLEGATION

13.  As a result of committing the foregoing offenses, in violation of 18 U.S.C. § 371 and 31 U.S.C. § 5324, alleged in Counts One and Two of this Information, MARTIN MCKERNAN, the defendant, shall forfeit to the United States, pursuant to 31 U.S.C. § 5317, all property, real and personal, involved in the offense or traceable to such property, including, but not limited to, the following:

a.  At least $84,725 in United States currency, in that such sum in aggregate is property which was involved in the conspiracy to violate 31 U.S.C. § 5324 or is traceable to such property.

Substitute Assets Provision

b.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

i.  cannot be located upon the exercise of due diligence;

ii.  has been transferred or sold to, or deposited with, a third party;

iii. has been placed beyond the jurisdiction of the court;

iv.  has been substantially diminished in value; or

v.   has been commingled with other property

- 10 -

which cannot be divided without difficulty;
it is the intention of the United States, pursuant to Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of the defendant up to the value of the
forfeitable property.

(Title 18, United States Code, Section 371;
Title 21, United States Code, Section 853(p);
Title 31, United States Code, Sections 5317, 5324)


_Michael J. Garcia_
MICHAEL J. GARCIA
United States Attorney

- 11 -