**THOMAS FITZPATRICK**
ATTORNEY AT LAW
500 FIFTH AVENUE
33RD FLOOR
NEW YORK, NEW YORK 10110-3398

(212) 930-1290
FAX: (212) 730-9690

USDC SDNY
DOCUMENT
ELECTRONICALLY F[ILED]
DOC #: _____
DATE FILED: 9/17/07

SEP 0 6 2007

September 5, 2007

*Fed Ex*

Hon. William H. Pauley, III
United States District Judge
United States Courthouse
Room 2210
500 Pearl Street
New York, NY 10007

Application Denied.

**SO ORDERED:**

_____
WILLIAM H. PAULEY III U.S.D.J.
9/14/07

Re:   *United States v. Martin McKernan*
      07 Cr. 674 (WHP)

Dear Judge Pauley:

      I represent defendant Martin McKernan in the above-referenced Information that is pending before your Honor. On July 24, 2007, Mr. McKernan pleaded guilty to the two-count Information before Magistrate Judge Michael Dolinger. Sentencing is scheduled for October 26, 2007.

      By this letter, Mr. McKernan respectfully requests permission to travel to Ireland to visit his family. Mr. McKernan was born and raised in County Tyrone, Northern Ireland, and his wife, Margaret, was born and raised in County Louth in the Republic of Ireland. Both emigrated to the United States and became U.S. citizens. On August 7, 2007, Mr. McKernan's wife and their three young children, ages 11, 9 and 3 moved back to Ireland and are currently living in County Louth, near her family. While the decision to move back to Ireland had always been in the back of their minds, Mrs. McKernan wanted to be near her family now, in case her husband winds up being sentenced to a period of incarceration. She returned to Ireland in early August in order to get the children settled in before the school year began.

      Mr. McKernan and his family and his wife's family have posted significant assets, including their homes, to secure his release on bail. Specifically, Mr. McKernan was released on a $3,000,000 Personal Recognizance Bond signed by two financially responsible persons and secured by $2,500,000 in real property, including (1) his and his wife's home, (2) his brother-in-law's (his sister's husband) home, (3) his wife's sister's and her husband's home, (4) a residential development project in Manhattan, (5) a commercial building in Yonkers and (6) a plot of commercial land in Yonkers. (Mr. McKernan has a 50% interest in each of these last three investments). Mr. McKernan, Mrs. McKernan and his brother-in-law and his wife's sister

2

and her husband each signed a Confession of Judgment in the amount of $3,000,000. Since Mr. McKernan's release, the commercial building in Yonkers has been sold and the net proceeds, by consent of the government, are being held by the attorney who represented Mr. McKernan and his partner in the transaction. Mr. McKernan's share of the proceeds is $503,000.

In brief, Mr. McKernan's and his wife's families would face financial ruination were Mr. McKernan to become a fugitive. In fact, Mr. McKernan has all of his wordly assets posted as bail. Moreover, all of these sureties are aware of Mr. McKernan's request to travel to Ireland and they are fully supportive of it. In addition, Mr. McKernan is willing to immediately submit to the government a check in the amount of $84,725 in payment of the agreed upon and anticipated forfeiture, even though a formal Forfeiture Order has not yet been signed.

Mr. McKernan's small construction company has ceased operating because of the current charges. Thus, he is unemployed and would very much like to spend time with his wife and children. Moreover, Mr. McKernan has elderly parents (in their mid-eighties) and four siblings living in Ireland. In the past, he has usually returned to Ireland two to three times a year to visit his family, visits that bring special joy to his parents. His last visit to Ireland was in September, 2006. Mr. McKernan would like to stay in Ireland as long as he can prior to his sentencing date. But, to demonstrate his good faith, he would appreciate even a ten-day (or even shorter) visit and the opportunity to request a subsequent, longer visit.

Mr. McKernan is very anxious to put this matter behind him. Once he was arrested, he repeatedly urged me to resolve these charges as soon as possible and to try to have him sentenced as early as possible. If he is sentenced to a period of incarceration, he will not seek to postpone his surrender until after the year-end holidays. Instead, he would want to surrender as soon as possible to begin his sentence.

The government opposes this request, a not surprising response.

It is respectfully submitted that under all of these circumstances, Mr. McKernan is clearly not a flight risk. We hope your Honor will see fit to grant him permission to travel to Ireland to visit his family.

Respectfully yours,

Thomas Fitzpatrick

Copy to A.U.S.A. Harry Chernoff, Esq. *(By Fax and Mail)*